## SECURITY INS. CO. v. DAVIS.
### No. 910.

Court of Civil Appeals of Texas. Eastland.
Nov. 6, 1931.

Rehearing Denied Jan. 15, 1932.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Butts & Wright, of Cisco, for appellee.

FUNDERBURK, J.

A policy of insurance, dated March 24, 1929, executed by Security Insurance Company to Edgar Davis, for which the latter paid an annual premium of $150, purported to insure for one year a model D spudder "while located and contained as described" therein, "and not elsewhere." The location described therein was "Newton No. 1, Newton Lease, Brown County, Texas." The policy was accepted by the insured without being read. The spudder insured was at the time actually located at Diller No. 2 on Diller ranch lease in Throckmorton county, Tex. On November 2, 1929, the spudder, while located on the Bull lease well No. 4 in Brown county, was burned. This location was something like 1,800 to 1,900 feet from said Newton No. 1 on the Newton lease and across Jim Ned creek. Said policy was executed in renewal of another policy dated March 24, 1928, insuring the same property in the same location. The last-named policy was issued to Davis through N. F. Payne as agent for the insurance company. Subsequently, E. P. Crawford, in negotiating a deal to take over the Payne agency, applied to Treavitt, agent of Edgar Davis, to know if he could have the renewal of existing policies, and was authorized to renew, at the expiration thereof, said policy dated March 24, 1928. It was in pursuance of that understanding and direction that the policy in suit was issued. There was no other communication, written or verbal, between Crawford, the agent, or any one acting for him or the insurance company, on the one hand, and Edgar Davis, the insured, or any one acting for him, on the other, regarding the terms and provisions of the insurance contract.

The insurance company having denied liability, this suit was brought by Davis upon the policy to recover the insurance. It was alleged that the provision in the policy, to the effect that the property was insured while located on the Newton lease and not elsewhere, was the result of a mutual mistake of the parties; that it was the mutual intention of the parties to provide that said property be insured while located on the Diller lease in Shackelford county, "and on such other leases and at such other wells as it would be located on and at during the time commencing March 24th, 1929, and terminating on March 24th, 1930." Reformation, accordingly, of said policy was sought.

The defendant, Security Insurance Company, defended, first, upon the ground that the policy did not cover the loss, because the property was not, at the time of loss, located on the Newton lease; and, second, because the insured had, prior to loss, transferred his interest in the property to Cranfill-Reynolds Company, a third party, contrary to another provision in the policy. Upon a nonjury trial, the court found against the defendant's contention as to a transfer of interest in the property, and further found that, by mutual mistake of the insured and insurer, the policy provided that the property was insured only while located on the Newton lease, and that it was the mutual intention of the parties to provide for the insurance of said property for the entire period of one year from March 24, 1929, to March 24, 1930, "while said property was located on the Diller Lease in Shackelford County and at such other leases and at such other wells as it would be located on

and at during such time." From a judgment for plaintiff in accordance with such findings, the defendant has appealed.

If the evidence does not, as a matter of law, show that there was no such transfer by Davis of his interest in the property insured to Cranfill-Reynolds Company as to exempt the insurer from liability under the terms of the contract, the evidence, we think, at least raised an issue of fact as to which the finding of the trial court is conclusive.

 Upon the other point, a determination of the question presented involves a consideration of some of the elementary principles of contract law and of the nature of the equitable remedy of reformation. Some of these principles will be noticed. One of the requirements for the formation of a simple contract is "an expression of mutual assent of the parties to a promise or set of promises." Williston on Contracts, § 18. Such "mutual assent must be *expressed* (italics ours) by one party to the other, and except as so expressed is unimportant." Id. § 22. Ordinarily, "mutual assent" is expressed by an offer and an acceptance. Id. § 23. The words of the parties necessary to express such mutual assent include also "what is necessarily to be implied from what they said." Id. § 22a. The "mutual assent" may be expressed by acts, and in such case "any conduct of one party from which the other may reasonably draw the inference of a promise is effective in law as such." Id. § 22a.

The question presented for decision, stripped of all nonessentials, and reduced to its final analysis, is whether or not there was any evidence to show that mutual assent of the insurer and insured was expressed to a promise on the part of the insurer to insure the property in question while same was located on the Diller lease in Shackelford county, "and at such other leases and at such other wells as it would be located on and at during such time"; i. e., one year from March 24, 1929. Even a part of this question may be eliminated from consideration. We are inclined to think that, if it was known to both parties at the time the insurance contract was made that the spudder was located on the Diller lease, the certain fact of an intent to insure the property would necessarily imply a promise to insure it in its then location, and the necessary mutual assent thereto. But it is unnecessary for us to decide this point. The fact that the loss occurred while the spudder was located on neither the Newton lease nor the Diller lease narrows the material inquiry to a consideration of whether or not there was any evidence to show the expression of a mutual assent to a promise on the part of the insurer to insure the property while located on any lease or at any well it would be located on or at during the year beginning March 24, 1929, and ending March 24, 1930.

If there was any such evidence, of what does it consist? As shown in the foregoing statement, there were no preliminary negotiations between the parties, except an inquiry upon the part of the insurance agent some time before as to whether he would be permitted to renew the former policy at its expiration and a direction from the insured's agent to make such renewal at said expiration. All that was ever thereafter done was that the agent caused to be prepared a policy exactly like the one to be renewed, except as to the time, and delivered it by mail to the insured. Since the insured must recover, if at all, upon a contract, it cannot be contended, of course, that there was no contract. Granted then, that there was a contract, the mutual assent to its provisions necessary to be expressed was expressed by means of an offer made by the insurer and accepted by the insured, or an offer made by the insured and accepted by the insurer. Either the insured offered to accept a policy containing the same provisions as the former policy, which offer was accepted by the insurer by its act in delivering such policy, or else the insurer, by mailing such a policy to the insured, thereby offered insurance according to the provisions of the policy, which offer was accepted by the insured by keeping the policy and paying the premium. It necessarily results that the parties, in one or the other of these ways, expressed their mutual assent to the provision in the policy to the effect that the property was to be insured while located on the Newton lease in Brown county and not elsewhere. If they did not express mutual assent to that provision, they did not express mutual assent to any provision, and no contract for insurance existed. If the parties did not intend to express their assent to such a provision, then they simply did not make the contract they intended to make. If the only contract made was one the parties did not intend to make, the equitable principles governing the reformation of written instruments can afford no relief. "Reformation is a proper remedy where the parties have reached a definite and explicit agreement understood in the same sense by both, but by their mutual or common mistake the written contract fails to express this agreement." Black on Rescission & Cancellation, § 11. "If the writing embodies the contract actually made, the fact that the parties acted under a mistaken idea either of law, equity, or facts will not entitle a party to such relief; for no court has jurisdiction to change the contract actually made." Delaware Ins. Co. v. Hill (Tex. Civ. App.) 127 S. W. 283, 286; 53 C. J. 909. "A contract which the parties intended to make, but did not make, cannot be set up in place of one which they did make, but did not intend to make." Reagan v. Bruff, 49 Tex. Civ. App. 226, 108 S. W. 185, 187; 53 C. J. 909. "There can be no reformation unless there is a preliminary agreement, a prior contract either

written or verbal, by which to make the rectification. The minds of the parties must have met in a contract, for if they did not there is no contract, and hence none to be rectified. There must have been an agreement, a common assent to the same thing, a valid agreement sufficiently expressing the real intent of the parties. If no contract was ever made concerning the matter about which a mistake is claimed, there can be no reformation. Inasmuch as the written instrument must fail to express the agreement the parties actually made, the contract established must differ from the instrument sought to be reformed. Thus the terms of the real agreement, the exact contract which the parties agreed upon but failed through mistake to put into the writing, must be shown." 53 C. J. 924.

■ The logical and necessary deduction to be made from these principles is that, where the only agreement made, as in this case, is the one embodied in the written instrument sought to be reformed, there can be no reformation. These conclusions seem to be in entire accord with all the authorities cited in the briefs. As to the necessity of the assent of the insured to the provisions claimed to have been agreed upon, and by mutual mistake omitted or not correctly expressed, Judge Williams, in Ætna Ins. Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 1061, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020, speaking for the Supreme Court, said: "Of course, the question whether or not the agent did assent is to be determined from what he said and did in the negotiations, and *not from any uncommunicated intention he may have had.*" (Italics ours.)

We are therefore of opinion that the trial court erred in its finding and judgment, because of which the judgment must be reversed and judgment here rendered that plaintiff take nothing by his suit, all of which is accordingly so ordered.

HICKMAN, C. J., dissents.

### On Rehearing.

FUNDERBURK, J.

In the original opinion we said, in stating the case, that Crawford, the insurance agent, "in negotiating a deal to take over the Payne agency, applied to Treavitt, agent of Edgar Davis, to know if he could have *the renewal of existing policies,* and was authorized *to renew, at the expiration thereof, said policy dated March 24th, 1928.*" With reference to this statement is was said: " * * * There were no preliminary negotiations between the parties, *except an inquiry upon the part of the insurance agent sometime before, as to whether he would be permitted to renew the former policy at its expiration and a direction from the insured's agent to make such renewal at said expiration.*" This statement

was based upon testimony of Treavitt as follows: "I did say that, in 1928, Mr. Crawford got in touch with me, and asked me, in substance, that if he bought Mr. Payne out if I would allow him to *renew* the fire and other insurance which Mr. Payne had been carrying for Mr. Davis and Cranfill-Reynolds. I did tell him that we would let him *renew* the policies and to go ahead and renew them as they expired from time to time." (Italics ours.)

In our re-examination of the case, in response to appellant's able motion for rehearing and very earnest argument made in support thereof, we have had our attention directed to the possible significance of other testimony of Treavitt, as follows: "I did have a conversation with Mr. Crawford for Mr. Davis and Cranfill-Reynolds Company with reference to whether or not he would *continue to handle all of the business for them* if he purchased the agency from Mr. Payne. I did agree with him *that he would continue to carry the insurance in the event he purchased the agency from Mr. Payne.*" (Italics ours.) It was our view that the testimony first quoted was not in conflict with that last mentioned, but simply more specific. We are still of the opinion that such is the proper construction of all the testimony. If the witness had a specific agreement with the agent by which the latter was obligated to renew at their expirations all policies then existing, as he said he had, it would be perfectly natural, we think, for him to refer to such an agreement as one wherein the agent had asked the witness "whether or not he would continue to handle all of the business for them if he purchased the agency," and which had resulted in an agreement that "he (that is, the agent) would continue to carry the insurance in the event he purchased the agency from Mr. Payne."

■ But it may be well to consider whether it would affect the disposition of the appeal if we should regard the evidence as showing, not an agreement to renew existing policies at their expirations, but an agreement to "continue to handle all of the business," and "carry *the* (italics ours) insurance." Such an agreement would not be enforceable as a contract, unless supplemented by reference to the then existing contracts of insurance. How could the appellant be connected with such an agreement any more than some other insurance company of which Crawford was agent? It was just as necessary to show that appellant was a party to the alleged agreement as that the agreement existed. Springfield, etc., Ins. Co. v. Hubbs-Johnson Motor Co. (Tex. Com. App.) 42 S.W.(2d) 248. How otherwise could the amount of the insurance be determined? Id. The testimony would show no contract capable of rectification unless it be referred to the then existing policies to show, among other things, the insurer, the property insured, the amount of insurance, the particular terms, etc. Of necessity, then, the agree-

ment, if construed as one by which appellant obligated itself to continue to carry insurance, would be one obligating it to carry insurance in the amount, upon the property, at the place, etc., as provided in the then existing policy, save only as the new agreement enlarged, restricted, or varied the terms and provisions of such policy. It may be granted that an unconditional agreement to continue to carry insurance upon a particular property may be inconsistent with a policy insuring the property only while located at a place where the property was not located when the policy became effective. Although the next day, or a few days thereafter, the property could have been located so as to be protected within the terms of the policy, there would necessarily be an appreciable time when the insurer would not "continue to carry the insurance." We are somewhat inclined to the view that the policy was subject to rectification to the extent of providing insurance upon the property at the place the property was located when the policy went into effect. As suggested in the original opinion, if the property had been destroyed at that place, it may be that reformation would have been available. We do not decide this question. It is one itself not free from difficulty, and its decision is wholly unnecessary. But, conceding that reformation could have been had under such circumstances, how could that warrant a finding of the existence of a contract having a provision not necessary to a continuance of the insurance previously existing and not contained in such former policy, but entirely different in legal effect from any provision in such policy? If the agreement testified to, in order to be effective as a contract necessarily referred to and made a part thereof the terms and provisions of the previous policy save only as the oral agreement varied the terms of the policy, then it would be just as competent and logical to hold that the new contract was for a different amount of insurance, or was upon an entirely different property, as that it insured the property not merely at the place it was then located or in a named place, but at any other place where it might be located in the future. Suppose the witnesses of the insurer had testified that, by reason of facts known to them, they intended to insure the property after the expiration of the existing policy in the amount of $5,000 instead of $3,000, or that they intended the insurance to cover certain additional or different property than that named in the former policy, and suppose appellee's witnesses testified to the same intention, based upon knowledge of the same facts. In the absence of any communication of such intention from one to the other in the form of an offer and acceptance, could any contract be thus formed embodying such intention? Just so, we think, could no contract be shown by the wholly uncommunicated intention—if the

evidence shows such—that the property in question should be insured, not as provided in the previous policy (i. e., only while located at a particular place), but at any place where it might be located in the future.

After a careful consideration, we are still of the opinion that, under the authorities cited and the reasoning upon which same are based, no right of reformation is shown by the record in this case, and that the motion for rehearing must be overruled, which is accordingly so ordered.