## CRANFILL–REYNOLDS CO. et al. v. SECURITY INS. CO.

### No. 1484—6204.

Commission of Appeals of Texas, Section B. Jan. 24, 1934.

Butts & Wright, of Cisco, for plaintiffs in error.

Thompson, Knight, Baker & Harris, of Dallas, for defendant in error.

RYAN, Judge.

Edgar Davis instituted this suit in the district court of Eastland county against the Security Insurance Company to have reformed an insurance policy and recover the amount thereof, as a result of the insured property having been destroyed by fire. Thereafter, the Cranfill-Reynolds Company filed its plea of intervention and motion to be substituted as plaintiff in said cause, alleging that, since the loss had been sustained, it had acquired all the interest of the original plaintiff in and to the property and to his claim and cause of action against the insurance company, and is the beneficial owner thereof.

There was judgment for the intervener in the trial court (a jury having been waived) which was reversed and rendered for the insurance company by a majority of the Court of Civil Appeals, the Chief Justice dissenting. 45 S.W.(2d) 376.

The undisputed facts are that on March 24, 1928, the company issued to Edgar Davis a policy covering damage to or destruction by fire of one Fort Worth model D spudder, including drilling tools consisting of machinery (excepting engines and boilers) cables, belting, and tools of every description, owned solely by the assured and used in the drilling and cleaning out of oil wells, "known, numbered and located as follows: Newton No. 1, Newton Lease, Brown County, Texas." The premium paid was $150, and the policy expired one year after its issuance. N. F. Payne was the agent at Cisco, through whom the policy was obtained. In June, 1928, E. P. Crawford purchased and took over the Payne insurance agency, with the assurance that the business of Davis and of Cranfill-Reynolds (handled by a Mr. Treavitt, representing both concerns) would be continued with him and policies rewritten as they expired.

The machine was used for the drilling of shallow wells, and remained at each well for from eight to fourteen days or longer, when it would be moved to another, and so on. Davis was then working for Cranfill-Reynolds as a contracting well driller.

Crawford, the insurance agent, testified that it was the custom of his office to renew, at expiration, all policies unless instructed to the contrary. On the expiration of the above policy, he, on March 24, 1929, issued a new policy (involved in this litigation) for one year, which was a copy of the old policy and described the insured property the same as before, and as "located as follows: Newton No. 1, Newton Lease, Brown County, Texas." Premium amounting to $150 was paid by Mr. Treavitt, who handled all that character of business for Davis, and the policy was received by him.

When the policy, dated March 24, 1929, was issued, the spudder was on the Diller lease in Shackelford county, and not on the Newton No. 1 in Brown county. The property was burned on November 2, 1929, while on the "Bull lease" in Brown county, about 1,800 to 1,900 feet from the Newton No. 1 lease. These two leases were separated by Jim Ned creek, which ran between them.

The company contends that, because the policy described the property at a specific location only and the loss occurred at a different place, the loss is not covered under the policy, and no recovery thereunder can be had; also that interest should not begin to run on the claim until sixty days following the making of proof of loss to the company instead of from January 1, 1930. The latter contention is concurred in by plaintiff in error, who confesses error to such part of the judgment below and admits that interest should be computed only from April 28, 1930, and the judgment modified accordingly.

The trial court found as a fact that it was the mutual intention of the insurer and insured that said property should be insured during the entire year commencing on March 24, 1929, and terminating on March 24, 1930, while said property was located on the Diller lease in Shackelford county and on such other leases and at such other wells as it would be located on and at during such time, and by mutual mistake of insurer and insured the policy provided that the property was insured only for the period of time that it was at Newton No. 1 in Brown county, Tex.

The trial court also found as a fact that Davis sustained a loss of $1,705 by reason

of the insured property being injured and damaged by fire, that, after said loss was incurred and the cause of action accrued to Davis, he, for a valuable consideration, assigned his claim to Cranfill-Reynolds Company, and concluded as a matter of law that the plaintiff in said suit is entitled to have the policy reformed so as to speak the intent of the parties as above stated and that the intervener, Cranfill-Reynolds Company, is entitled to recover from the insurance company three-fourths of said sum of $1,705 (the policy contained a three-fourths recovery clause), with legal interest from January 1, 1930.

The Court of Civil Appeals was of opinion that the evidence was sufficient to raise an issue of fact as to the transfer of interest by Davis to Cranfill-Reynolds Company, and the time thereof, and therefore the finding of the trial court on that point is conclusive, but, on the other point, the Court of Civil Appeals was of opinion that there was no evidence to show the mutual assent of the insurer and insured to insure the property in question during the life of the policy, regardless of its location, although that court suggests, without so deciding, that, if it was known to both parties at the time the 1929 policy issued that the spudder was located on the Diller lease instead of on the Newton lease, as stated in the policy, the certain fact of an intent to insure the property would necessarily imply a promise to insure it in its then location and the necessary mutual assent thereto, and therefore our inquiry is narrowed to a consideration of whether there was any evidence of probative effect to show the expression of a mutual assent to a promise on the part of the insurer to insure the property while located on any lease or at any well it would be located on or at, during the year beginning March 24, 1929, and ending March 24, 1930. If we so find, then the finding of the trial court on the subject must be affirmed.

In this connection, it is proper to consider the acts of the parties as well as what they intended and whether the instrument as written correctly sets forth the agreement as actually understood and relied on by them.

■ We have reached the conclusion that there was adduced evidence of probative force supporting the judgment of the trial court, and that the Court of Civil Appeals erred in holding otherwise.

If the company's contention be correct, then the policy of 1929 was void from the beginning, and the insured obtained nothing from the payment of the premium which the company retained, although he trusted the agent to take care of his insurance, because at that time the insured property was not on the Newton lease and had not been so situated for many months, in spite of the fact, admitted by the company's representative who had charge of this particular insurance, that she knew this drilling machine was kept at one well only during the time that it was being drilled under ordinary circumstances, for about two or three weeks; that she knew of no policy having ever been canceled because of the change of location of the property; that the hazard is the same on one well as on another; and such machines are ordinarily used on property where the hazard is the same in all instances. She further admitted it was not her intention to insure the rig only until the well where the rig was then located was finished, but it was her purpose to insure it for one year. She testified further that she did not know where the machine was when the new policy was issued, but she knows that in reason the rig did not stay on the Newton No. 1 well for the full period of one year, and no one told her where the rig was when the policy was renewed on March 24, 1929; she simply copied the old policy.

Mr. Crawford, whose agency arranged and handled this particular policy, testified that he has a general knowledge of what a model D spudder is and of the location of the Newton lease in Brown county; that a spudder is moved from one well to another; when one is completed another is started. He testified further that, when he took over the agency in June, 1928, he knew there was a policy in force issued to Mr. Davis covering this machine which remained in force until March 24, 1929; he did not know at that time where this particular machine was; but he does know that spudder machines are used exclusively for the boring of shallow wells and are not used on deep wells, and that, as soon as a shallow well is completed, the spudder drilling machine is moved and does not remain at the drilled well for the production of oil or gas.

Mr. Crawford testified further that it would not require over twenty to thirty days to complete such a well, also that he knew Davis was drilling by contract, continuously, for Cranfill-Reynolds, and this particular machine was being used by him in the drilling of those various wells. He knew that the machine would not remain indefinitely at any one location; the premium of $150 was very high for the time the machine would stay at any one location. He knew also that all the property described in the policy, which was to the extent of $3,000, would not be used or put at the Newton No. 1 well.

Significant of what he understood the actual contract between the parties to be is his testimony that it was his intention to insure Mr. Davis for the period of one year, and that he did not understand that the insurance should terminate when Newton No. 1 well was completed, and it is not customary to insure property, such as trucks, automobiles, street graders, etc., moved from place

to place to serve their purpose, at the particular place of its location when the policy is issued and only at that place.

Mr. Treavitt, who handled that character of business for Mr. Davis (Davis devoting his time to field work entirely), testified that he agreed with Crawford that the latter would continue to handle such insurance business previously handled by Payne, his predecessor, in the agency, and, when the policy of 1929 was issued, he received it, paid ·the premium for Mr. Davis, and "relied on the agency to take care of them"; the understanding being that Mr. Davis was being insured against loss on the machine for a period of one year regardless of where the machine was located, and he would not have paid the premium of $150 had he known the spudder would be insured only during the time it was located at the Newton well. He never notified the agency of any location, but left the matter of insurance with it and paid the bill for premium when sent to him.

Mr. Davis testified that the machine was not located at the Newton No. 1 well longer than from twelve to fifteen days; the well was drilled in about eleven days. He would not have paid $150 for insurance on the machine for the time it was on only one of the wells. It was his intention and belief that he was acquiring insurance on his machines for one year, wheresoever they might be located.

■ If the understanding was as contended by the insured, then the policy as written was not in conformity thereto, and, if by the mistake or fraud of the company's agent, without the insured's knowledge, the agreement was misstated in the policy, the insured was entitled to raise the issue and offer evidence in support thereof, being a case in which one contract was agreed on and another expressed in the writing. The fact that the policy was accepted without noticing the mistake would not preclude correcting the mistake. Ætna Ins. Co. v. Brannon, 99 Tex. 397, 89 S. W. 1057, 1060, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; Kelley v. Ward, 94 Tex. 295, 60 S. W. 311, 313.

In Kelley v. Ward, the court, quoting the New York Court of Appeals (Albany City Sav. Inst. v. Burdick, 87 N. Y. 40), said: "It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake of the parties, however induced, or the mistake of one party and fraud of the other, a court will reform the instrument so as to make it conform to the actual agreement between the parties."

In Ætna Ins. Co. v. Brannon, the court in discussing the inquiry, "Would plaintiff be entitled to recover without the necessity of having the contract reformed as to description?" etc., said: "Since he could not recover upon the policy as written, it was necessary for him to allege and prove the facts as to the contract really made and as to the mistake in reducing it to writing; but, if he did so, the remedy to which he would be entitled would be a direct judgment in accordance with the true contract thus shown, for the recovery of the money, just as if there had been first a reformation of the policy." The court further said: "It is true that the cases often speak of the necessity of reforming the instruments in order to escape their legal effect as written; but in using such language the courts are considering the rights of the parties, and not the form of judgment to be given in cases where the right to a reformation is shown. Of course, an action solely for the reformation of a written contract might still be maintained, especially when that is the only relief needed by the plaintiff, as would have been the case here had the plaintiff sought to correct the policy before the loss occurred. But, since the property has been destroyed, the substantial question is whether or not plaintiff is entitled to recover the insurance money, and that he may do by pleading and proving any state of facts which entitles him to it, either at law or equity."

The controversy in the present case is not over the construction to be given to a policy as written, all parties standing on it, as happened in U. S. Fire Ins. Co. v. Rothwell (Tex. Com. App.) 60 S.W.(2d) 759, British America Assurance Co. v. Miller, 91 Tex. 414, 44 S. W. 60, 39 L. R. A. 545, 66 Am. St. Rep. 901, and kindred cases, but the terms of the contract itself, and these can be shown where the essential facts are present, and even after a loss has occurred. 24 Tex. Jur. 744; 32 C. J. 1140.

■ Defendant in error suggests in its brief that Crawford was no more than a broker with the consequent limitation of a broker's rights and liabilities, because the policy was written at the company's Dallas office, and cites Hartford Fire Insurance Co. v. Walker, 94 Tex. 473, 61 S. W. 711, in support. A sufficient answer is that, while the policy was written in the Dallas office, this was at the request of Crawford, whose Cisco agency represented the company, and the policy contains the express condition that the policy "shall not be valid unless countersigned by the duly authorized agent of the company, at Cisco, Texas," and was actually so countersigned by Crawford as the company's agent, on March 24, 1929, at Cisco, Tex.

In Hartford Fire Insurance Co. v. Walker, supra, one Blanton represented the company at Gainesville, Tex., with authority to receive and forward applications for insurance upon gin property and forward them to D. E. Grove, at Dallas, Tex., who alone had the power to issue a policy upon that ·class of property, and a written application was re-

quired to be signed by the applicant for insurance, which contained the special provision and stipulation that only the general agent of the company had authority to act for the company in any manner as to such insurance, and this was repeated in large red letters upon the face of the policy itself, which made the application a part thereof. Clearly the citation is not pertinent here.

We recommend that the judgment of the Court of Civil Appeals be reversed; that the judgment of the trial court be modified to the extent of carrying interest only from April 30, 1930, and, as so modified, be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court reformed, and, as reformed, affirmed, as recommended by the Commission of Appeals.