### TRADERS & GENERAL INS. CO. v. POOL et al.

#### No. 4731.

Court of Civil Appeals of Texas. Amarillo.

March 29, 1937.

Rehearing Denied April 26, 1937.

Lightfoot, Robertson, Saunders & Gano and Claude Williams, all of Fort Worth, for plaintiff in error.

Reynolds & Heare, of Shamrock, and Underwood, Johnson, Dooley & Huff and R. A. Wilson, all of Amarillo, for defendants in error.

STOKES, Justice.

In its motion for a rehearing, plaintiff in error calls our attention to our failure in the original opinion to dispose of its third assignment of error in which it contends that, Sidney Johnston not having been made a party to the suit, no final judgment of reformation of the insurance policy, as prayed for by appellee, could be entered. A re-examination of the record reveals that we did not specifically pass on said assignment, and in order that we may express our views concerning the third assignment, we have concluded to withdraw the original opinion and, in its place, substitute the following as the opinion of the court:

The defendant in error Mrs. Doll Pool, acting for herself and as next friend for her infant daughter, Earlene Pool, brought this action in the district court of Wheeler county against the plaintiff in error, Traders & General Insurance Company, for compensation under the Employers Liability Act of Texas (Vernon's Ann.Civ.St. art. 8306 et seq.) for the death of her husband, Pleas Pool, alleging that the said Pleas Pool lost his life on the evening of May 1, 1934, while engaged in the course of his employment with Fain Johnston, a drilling contractor, who, she alleged, carried a policy of insurance with the plaintiff in error for the benefit of his employees under the provisions of the Workman's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.). She alleged that, about 8 o'clock in the evening of said day, the said Pleas Pool was engaged as tool dresser at the well, which was being drilled by the said Fain Johnston as driller, and a severe electrical storm arose which was accompanied by considerable lightning and rain; that the duties of the said Pleas Pool in his said employment required him to keep up the steam in the boiler of the engine used in furnishing power for the operation of the drilling machinery which required him to be under and around a metal mast and numerous guy wires attached to the same, which mast and guy wires were being used as part of the drilling equipment; and that, while engaged in his duties in and about said well, he was struck by a bolt of lightning from the effects of which he died almost instantly.

She alleged that the said Pleas Pool had not worked in said capacity for a period of twelve months, but that other employees of the same class had worked for substantially the whole of the preceding year; and that their compensation was $6 per day, but, if not, then a rate of compensation which would be just and fair to all parties concerned should be computed by the court or jury, and she alleged that $6 per day would be a just and fair computation.

The defense to the action was that the said Fain Johnston did not have such a policy of compensation insurance and that no such policy had ever been issued to him by plaintiff in error and, further, that the said Pleas Pool, at and immediately preceding his death, was not engaged in the course of his employment, but, at said time, he had left the scene of his employment, returned to his tent where his family lived, and was engaged in adjusting the guy ropes of said tent, an employment which concerned him and his family and not necessary to, nor connected with, his employment with Fain Johnston.

The facts showed that after the said Fain Johnston had contracted to drill said well and when he was about ready to begin the same, he procured the parties with whom he had so contracted to obtain the policy of insurance for him, and that they placed the order for the insurance with Lyle & Lyle, who were insurance brokers of Shamrock, Tex., who, in turn, placed the same with the Panhandle Insurance Agency of Pampa, and that this latter firm was soliciting agents for the plaintiff in error, with authority to solicit insurance from customers, prepare and send in applications therefor and receive the written policies, deliver same to the insured parties, and collect the premiums thereon. Lyle & Lyle communicated the information concerning the policy to Mr. Oden of the Pampa agency by telephone and explained to him that the insurance was for the Johnston Brothers, stating that Fain Johnston had a contract with Du Mar Oil & Gas Company, owners of the lease, to drill three or four wells, and that his brother, Sidney Johnston, would drill some other wells for them later on, and suggested to him to have the policy issued for Johnston Brothers. As a matter of fact, there was no partnership between the Johnston Brothers, although they were engaged in the same line of business. As written, the application was made on be-

half of "Johnston Brothers, Drilling Contractors" and the policy written accordingly. The jury found that Fain Johnston did not sign the application, but, before the death of Pleas Pool, Fain Johnston had seen the policy, had it in his possession, and had observed that it was written in the name of Johnston Brothers, Drilling Contractors.

When the storm arose on the evening of May 1, 1934, Fain Johnston left the rig and instructed Pleas Pool to look after the boiler and keep up steam so that, if the storm subsided later on, they could resume operations and, after it began to rain, said Pleas Pool went to his tent, some 250 yards away, spoke to his wife and remained in the tent a few minutes, and then emerged, evidently to loosen the guy ropes which held the tent. Almost immediately after he emerged from the tent he was struck by lightning and he was found dead a few seconds later at or near the corner of the tent.

After the death of the said Pleas Pool, the usual notice thereof was given by the defendant in error and claim for compensation was filed in the usual form, naming Johnston Brothers, Drilling Contractors, as the employers, and the original petition in this case also alleged them as such. The amended petition, upon which the case was tried, alleged that Fain Johnston was the employer and that the policy was issued for his account, although, through mutual mistake, the application for the policy and the policy itself were made to run in the name of Johnston Brothers, Drilling Contractors.

The trial was before a jury upon special issues, all of which were answered by the jury in favor of the defendant in error, and judgment was accordingly rendered decreeing to her the total sum of $4,689.50, being compensation at the rate of $14.40 per week for 360 weeks, with interest accrued, said sum to be paid in a lump sum in accordance with the prayer and the findings of the jury, one-half to the defendant in error Doll Pool, and one-half to Earlene Pool, the minor daughter, the minor's portion to be paid into and remain in the registry of the court, subject to further orders of the court.

■ The case is submitted on twenty-two assignments of error, but, as we view the case, it is not necessary to discuss them separately and in the order of their arrangement in the brief. The first contention to be noticed is that the judgment of the trial court is not a final judgment and will, therefore, not support an execution. This contention is based upon the failure of the judgment to specifically dispose of Fain Johnston. Fain Johnston, on the day of the trial, voluntarily appeared under a plea of intervention in which he merely stated, in effect, that it was agreeable with him for the court to reform the policy of insurance involved in the case so as to name Fain Johnston as the insured instead of Johnston Brothers, Drilling Contractors, as the policy had originally been written. He asked no relief and none was asked against him by any party to the suit, but his appearance was merely in response to the plea of the plaintiff in error to the effect that he was a necessary party before a reformation of the policy could be decreed by the court, as prayed for by defendant in error. Fain Johnston was not mentioned in the judgment of the court and no disposition was made of him in specific language, but, under the law of many years' standing in this state, such is not necessary where all the issues and parties are disposed of by implication and, as we construe the judgment in this case, it is entirely sufficient for that purpose. In fact, it is difficult to conceive how a specific decree as to Fain Johnston could have been framed. He asked the court for no relief and no party to the suit prayed for any as against him. He had no interest in the subject-matter, and the trial court did not find it necessary to even decree a reformation of the policy, a matter which will receive attention later in this opinion. We, therefore, hold that no specific decree concerning Fain Johnston was necessary in this case, and this contention of plaintiff in error is overruled. De Zavala et al. v. Scanlan et al. (Tex.Com.App.) 65 S.W. (2d) 489, and cases cited therein, including the early case of Patrick v. Gibbs, 17 Tex. 275.

■ In this connection plaintiff in error contends in its third assignment of error that Sidney Johnston, being named in the policy as a member of a partnership known as Johnston Brothers, Drilling Contractors, was a necessary party to the suit, and he not having been made a party, no valid judgment reforming the policy could be rendered as his interest in it would necessarily be affected thereby. If Sidney Johnston had an interest in the policy, it was certainly no greater, nor in any respect different, from that of Fain

Johnston, and, if it were not necessary specifically to reform the policy as to Fain Johnston, it necessarily follows that Sidney Johnston was not a necessary party to the suit because it is obvious that no judgment could have been rendered against him other than one which specifically decreed a reformation of the same instrument.

Under its fourth to tenth propositions, plaintiff in error contends · that the judgment rendered by the trial court in favor of the defendant in error is fundamentally erroneous and void, in that it permits a recovery upon the policy of insurance under the theory that same was held' by Fain Johnston when the same was written in favor of Johnston Brothers, Drilling Contractors, a copartnership composed of Fain and Sidney Johnston, without, in specific terms, reforming the policy. In other words, the judgment is erroneous and void because the court did not therein make a specific decree of reformation of the policy, as prayed for by defendant in error, and by such reformation substitute Fain Johnston as the employer for Johnston Brothers, Drilling Contractors, as originally provided by the policy. The answer to this contention is that the suit was not primarily a suit to reform the policy ·but, rather, it was an action to recover upon the policy after the contingency had happened upon which the recovery was sought. It is true that, in a suit to reform a contract, where reformation is deemed necessary as between the parties in order that they may proceed with its compliance, it is necessary, if the contract is reformed, to specifically so state in the judgment or decree of the court and, in that kind of a case, if it is not done, the judgment is not final; but the rule is different in a case such as this, where reformation of the contract is an incidental matter and the suit is basically for recovery upon the contract after the event has happened which brings into existence a claim or forms the basis of an action for recovery under its terms or for its breach.

The judgment in this case did not specifically provide for reformation of the policy, but it gave judgment in favor of the plaintiff in the case for an amount of money which the jury found she was entitled to recover under the terms of the policy, and no purpose could have been served in this case by such specific decree. If before any claim had arisen under the policy, the plaintiff in error had sought a reformation substituting Fain Johnston for Johnston Brothers, Drilling Contractors, as employers, in order that it may know in the future just whom it was insuring, and the judgment had failed to decree such reformation, it might have been different. It is probable that, in that event, the judgment would not have been a final judgment, but in a case like this, where all the substantial relief prayed for by the plaintiff in the case was granted and a reformation, although prayed for by her, was necessary, if at all, only as an incidental matter and to form a basis for such recovery, it was not necessary, in order for the judgment to be a final judgment, that it specifically decree such reformation. The granting of a judgment for defendant in error under the policy upon a pleading by her that the policy be reformed in such manner as to entitle her to recover thereon, and the recovery being sought and granted as the result of the happening of the event provided for in the policy as a basis for the recovery, was, in effect, a decree of reformation by implication, and for the purpose of this case was just as effective as it would have been if specifically reformed, as prayed for by the defendant in error. These propositions are, therefore, overruled.· Cranfill-Reynolds Co. et al. v. Security Ins. Co. (Tex.Com.App.) 67 S.W.(2d) 258.

The eleventh, twelfth, and thirteenth assignments of error raise the question of authority on the part of Panhandle Insurance Agency of Pampa as agent to bind the plaintiff in error in such manner as to warrant the court in reforming the policy of insurance or granting to the defendants in error a recovery thereon under the theory that the application for the policy and the policy itself, in connection with the knowledge possessed by the members of the firm known as Panhandle Insurance Agency, were sufficient in . form and substance to cover and insure the employees of Fain Johnston.

The authority of Panhandle Insurance Agency to act as agent for plaintiff in error was in writing and its provisions made them what the law generally terms "soliciting agents." It provided that, "Your authority in so far as acceptance of Workman's Compensation Insurance coverage by this company is concerned extends only to the taking of information and the filing of this information on proper application forms with this office." The facts in regard to the making of the application were that, after Fain Johnston contracted with

497

the Du Mar Oil & Gas Company to drill the well upon which the deceased, Pleas Pool, was working at the time of his death, two members of that company, to wit, W. D. Smith and Frank Dubose, suggested to him that he would have to have compensation insurance, and it was agreed that they would procure the same for him. These parties thereupon went to see the firm of Lyle & Lyle who were in the insurance business at Shamrock. In conversation with T. J. Lyle of that firm, they were informed that the Lyle firm could not place the insurance, as they did not represent a company that was carrying oil field risks, but that they probably could place it with an agency at Pampa. Lyle then telephoned to Mr. Oden of the Panhandle Insurance Agency at Pampa and informed Mr. Oden that he had a customer for oil field compensation insurance and, in the conversation, gave to Oden the information which went into the application for the policy. The jury found that the application was filled out in the office of the Panhandle Insurance Agency at Pampa and that it was not signed by Fain Johnston in person. We think the record warrants the conclusion as found by the jury that it was filled out and the name "Johnston Brothers, Drilling Contractors, by Fain Johnston," signed to it by some member of the firm of Panhandle Insurance Agency. The jury also found that Mr. Oden, a member of said agency firm, understood from his telephone conversation with Lyle that the policy of insurance was wanted for the benefit of Fain Johnston in well drilling operations he was then about to begin. In the conversation with Oden, Mr. Lyle informed him that Fain Johnston had a contract to drill three or four wells for the Du Mar Oil & Gas Company and that his brother, Sidney, was going to drill some wells for the same company at a later date; that the policies were to be for a period of twelve months and, to save making a separate application for Sidney Johnston, to have the policy issued for Johnston Brothers. It is conclusive, we think, that the Panhandle Insurance Agency, at the time the policy application was made, knew that the policy was wanted by Fain Johnston to cover his employees while engaged in drilling operations for the Du Mar Oil & Gas Company on the lease described in the pleadings and known as the Krizan lease, and that said agency intended the policy should so insure them regardless of what may have been the

purpose and intention of such agency with reference to employees of Sidney Johnston. If the plaintiff in error is bound by the information and the purpose and intention of the Panhandle Insurance Agency in the matter, then all of the contentions of plaintiff in error in this case relative to reformation of the policy, the existence of a partnership between Fain and Sidney Johnston, and matters relating to negligence and laches of Fain Johnston in not having the policy changed to his own name when he learned it was written in the name of Johnston Brothers, Drilling Contractors, become of no importance because, if plaintiff in error is so bound and the insurance agency was in possession of all the facts and its purpose and intention was to have the policy written as it was written, there is no basis for a controversy on those grounds.

It will be noted that the authority of the insurance agency was to take information and to file such information on proper application forms with the home office of the company. It is a familiar rule of law that, in general, the principal is charged with knowledge possessed by his agent when the agent is acting within the scope of his authority. It has been said by the courts in many cases that this rule, however, is restricted in transactions conducted by a soliciting agent, and the limitation has been well established that a soliciting agent is merely a special agent and has authority only to solicit business, take applications for insurance policies, in cases of insurance agencies, and perform other acts incident to that duty. This restriction has worked some confusion into the decisions of the courts in opinions on cases involving these special or soliciting agents, and in some of them are found pronouncements which seem to hold that a soliciting agent has practically no authority to bind his principal in any respect whatever. The rule means just what it says, viz., that the principal is charged with knowledge possessed by his agent when the agent is acting within the scope of his authority and, under the plain provisions of the rule, he is charged with knowledge possessed by a soliciting agent when that agent is acting within the scope of his authority in just the same manner as he is charged with the knowledge of any other character of agent. The restriction is as to the scope of the agent's authority, not as to the nature of the knowledge. If a soliciting agent receives information

concerning those things that are connected with his duties to his principal, his information relative to them is just as much the information of his principal as would be the information of any other agent. In this case, the agent, Panhandle Insurance Agency, had authority from plaintiff in error to take information and file such information on proper application forms with the company. That information included the ascertainment of the name in which the policy was to be written, the operations of the employer to be covered, and other matters which were to form the basis for the policy which the insurance company would execute and forward to its agent for delivery to the insured. Under the evidence in the case and the finding of the jury, the Panhandle Insurance Agency had all the information that any one else had with reference to the relationship of Fain and Sidney Johnston, and the agent was not told by any one that they were partners. The agency was informed at the time the application was made that Fain Johnston was going to drill three or four wells for the Du Mar Oil & Gas Company, and that Sidney Johnston was going to drill some wells later on for the same concern, and it was suggested that the policy be written in the name of Johnston Brothers in order to save the making of a separate application. The application was, as found by the jury, written by some one connected with the Panhandle Insurance Agency, signed by some one in their office, and forwarded to the company, and the policy involved in this case was issued by the company and returned to its agent at Pampa for delivery. There was no changing of the terms of the policy, nor was the company bound by any agreement not expressed in the policy and not fully covered by the application as interpreted by the agent who had authority from the plaintiff in error to take it. The information given the agent was given at the very time the application was written and consisted of the very items of information which the company needed in order to write the policy and, to obtain which information, it had appointed the agent. The agent was, therefore, acting within the scope of its authority in obtaining the information, assenting to the writing of the policy in the name of Johnston Brothers, Drilling Contractors, and forwarding the application to the company.

The Panhandle Insurance Agency was also authorized by the company to collect the premiums on the policy after it was written. In performing this duty before the death of Pleas Pool, it accepted on behalf of plaintiff in error two checks at different times, one in the sum of $400 and one in the sum of $186.55. In July, after his death, it accepted another check in the sum of $195.17. These checks all had written upon them a statement in effect that they were for the account of Fain Johnston. Moreover, on the 28th day of May, 1934, after the death of Pool, plaintiff in error was fully informed, in a written statement to it by Fain Johnston concerning the death of Pool, that no partnership existed between him and his brother, Sidney Johnston, and that the operations being carried on under the policy were his individual enterprise and not that of a partnership. After receiving this information, plaintiff in error continued to collect the premiums on the policy and treated it as a valid and subsisting contract and, when it was finally canceled in November, 1934, it was on the ground of failure to pay the premiums thereon, and not because of any mistake or discrepancy in designation of the insured employer.

We hold that the agent, Panhandle Insurance Agency, had authority to bind plaintiff in error in reference to the matters pertaining to the taking and forwarding to it of the application, including the name in which the policy was written, and that the policy was written to cover, and did cover, the employees of Fain Johnston, including the deceased, Pleas Pool, at the time of his death. We further hold that the discrepancy, if any, in the writing of the policy in the name of Johnston Brothers, Drilling Contractors, instead of Fain Johnston was ratified and waived by plaintiff in error after it became apprised of the facts in connection with the same, and that plaintiff in error is estopped from denying liability thereon in so far as those matters are concerned. Southern Mutual Fire Ins. Co. v. Mazoch Bros. (Tex.Civ.App.) 291 S.W. 257; German Ins. Co. v. Everett, 18 Tex.Civ.App. 514, 46 S.W. 95; Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057, 2 L.R.A.(N.S.) 548, 13 Ann. Cas. 1020; American Nat. Ins. Co. v. Park (Tex.Civ.App.) 55 S.W.(2d) 1088; Camden Fire Ins. Ass'n v. Wandell (Tex. Civ.App.) 195 S.W. 289; Cranfill-Reynolds Co. v. Security Ins. Co. (Tex.Com. App.) 67 S.W.(2d) 258; Southern Under-

writers v. Shipman (Tex.Civ.App.) 97 S.W. (2d) 370.

By appropriate assignments, plaintiff in error contends that the trial court erred in submitting to the jury over its objection special issue No. 12, wherein was submitted the question of whether the deceased, Pleas Pool, sustained his fatal injuries in the course of his employment with Fain Johnston and in overruling its motion for a judgment non obstante veredicto; the jury having answered said special issue in the affirmative. We do not agree with plaintiff in error in this contention. The evidence showed that, but for the electrical storm which arose a short time before Pool was killed by the stroke of lightning, he and Fain Johnston, who constituted the shift of workmen from 4 o'clock in the afternoon until midnight, would have continued the drilling operations without intermission. When the storm arose, drilling operations ceased under orders of Johnston and he left the rig, but instructed Pool to look after the boiler and keep up the steam until 11 o'clock and, if it were still raining at that time, to shut down the rig and instruct the next crew not to drill any more that night. The storm arose about 8 o'clock, and during the storm Pool went to his tent where his family was and remained in the tent some two or three minutes, when he said something to his wife about the guy ropes being taut. He left through the entrance to the tent, and within a very short space of time the lightning flashed and he was killed at or near the corner of the tent. It was shown that his attention was not required constantly at the boiler; that there was no shed or shelter from the rain except the tent; and that he was wearing his work clothes when he was killed. The fire was still burning in the engine and no one had taken his place to look after it. We do not think these facts took him out of the category of a workman employed in the course of his employment. His tent was some 250 or 300 feet from the boiler and was well within the zone in which he could have observed it. Whether he was engaged within the course of his employment was a question of fact, if there was evidence to support a finding upon it, and we think there was. The jury found, in answer to said special issue No. 12, that he was engaged in the course of his employment, and we overrule these assignments of error. Parker v. Royal Indemnity Co. (Tex.Civ.App.)

59 S.W.(2d) 243; Southern Surety Co. v. Shook et al. (Tex.Civ.App.) 44 S.W.(2d) 425.

Under the nineteenth and twentieth assignments, plaintiff in error complains of the failure of the trial court to submit special issues relative to the negligence and laches of Fain Johnston in receiving and retaining the insurance policy with full knowledge that it was written in the name of Johnston Brothers, Drilling Contractors, and making no comment or complaint to the insurance company of a mistake therein. In the view we have taken of the case that plaintiff in error is estopped from denying liability on the policy by reason of its constructive and actual knowledge of the facts pertaining to the name in which the policy was written, we deem the question of Fain Johnston's negligence and laches, if any, in making no complaint to the insurance company as to such matters to be immaterial in so far as this case is concerned, and we overrule these assignments.

Likewise in regard to the failure of the court to give to the jury a legal definition of the term "act of God." The question in the case was, not whether Pleas Pool lost his life by virtue of an act of God, but whether or not he was, under the circumstances of his employment, subjected to a greater hazard than was the ordinary person in the same vicinity. This was a question of fact for the jury and the jury found against plaintiff in error on the issue. There was ample evidence to support the finding, and no error is shown in these assignments.

The twenty-second assignment complains of the admission in evidence, over objection, of the certificate of the secretary of the Industrial Accident Board in so far as it attempts to describe the insurance policy. The certificate certifies that: "The attached and foregoing are full, true and correct copies of certain instruments, as follows: Notice that employer has become subscriber under policy No. W.C.2482 issued to Johnston Brothers Drilling Contractors by Traders & General Insurance Company, effective February 19, 1934, and expiring February 19, 1935 * * *." It is claimed that the statement, "Notice that employer has become subscriber, etc.," is a conclusion on the part of the secretary on a question of law or a mixed question of law and fact relative to the effective date of the policy.

We think the statement constitutes a designation by the secretary of the document which he has copied preceding it. There was no contention made by plaintiff in error that it had not issued such a policy nor that it was not effective on the date mentioned in the certificate. It would seem, therefore, that, even if the statement were not necessary as a designation of the instrument which the secretary had copied, no harm could have resulted to plaintiff in error by its introduction. The contention certainly becomes immaterial, however, in view of the fact that plaintiff in error introduced the policy itself showing the effective date to be the same as that set forth in the certificate.

We have carefully examined all of the assignments of error presented by plaintiff in error, and, finding none of them to be well taken, and that no error is shown by the record, the judgment will be affirmed, and it is so ordered.